**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA, DIVISION**

SPECNOR TECNIC CORP,
    Plaintiff

v.

Case No.: 8:10 cv 1148 26 MAP

SPEEDLINE TECHNOLOGIES, INC.
    Defendant.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL

Plaintiff Specnor Tecnic Corp. brings this action against Defendant Speedline Technologies, Inc. and states as follows:

### PARTIES

1. Specnor is a foreign corporation, having its principal place of business at 5350 J. Armand Bombardier, St.-Hubert, Quebec, Canada J32 1J1.

2. Speedline Technologies, Inc. is a Delaware corporation having its principal place of business at 3600 West Lake Avenue, Glenview, IL 60026.

### NATURE OF THE ACTION

3. This is an action under 28 U.S.C. § 2201 and 35 U.S.C. §271 for a declaration that certain accused products of Specnor do not infringe U.S. Patent 5,203,489 to Gileta et al. (hereinafter the '489 Patent). *See* Ex. A, '489 Patent.

4. Alternatively, this is an action to establish a reasonable royalty for those accused products pursuant to a Joint Stipulation and Request for Entry of Agreed Order and Permanent Injunction entered into between the parties in connection with a prior litigation before this Court.

*See Speedline v. Specnor Tecnic Corp.*, Case No. 8:00-cv-2033-T-26 (M.D. Fla.) [Dkt. 35] (hereinafter "Prior Litigation").

## JURISIDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action as it presents an actual controversy which arises under the patent laws of United States, Title 35, United States Code. *See* 28 U.S.C. § 2201. This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 2201.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the parties previously agreed that this Court is the proper forum in which to resolve disputes regarding the '489 Patent. Venue is also proper here because this action involves the Prior Litigation which was before this Court.

## BACKGROUND

7. This dispute arises out of a prior litigation between the parties that was settled and resolved almost 10 years ago. Speedline, and its sister company Electrovert, sued Specnor in the Prior Litigation for, *inter alia*, infringement of the '489 Patent.

8. Speedline claims to be the owner of the '489 Patent by way of assignment.

9. The '489 Patent describes a soldering device. *See* Ex. A, '489 Patent. Soldering is a process whereby a liquid metal alloy is used to join metallic components. Soldering is widely used in the field of electronics.

10. As noted in the Abstract, the '489 Patent describes a soldering device that uses a gas shroud about a wave of solder. The device includes a solder plate that extends over a solder reservoir and the solder wave. The plate includes slots for the passage of a pressurized oxygen-

free gas. The gas provides a blanket over the solder wave and permits the formation of a clean, oxide free solder.

11. The '489 Patent expires on December 6, 2011.

12. The Prior Litigation concerned Specnor's sales of complete inert wave solder machines. The Prior Litigation also concerned Specnor's sales of "conversion kits."

13. Specnor's conversion kits permitted users to convert a conventional soldering machine into a nitrogen based wave soldering system. By way of the kits, users could solder machines by injecting inert gas into the solder wave to reduce imperfections in the solder. The inert wave soldering machines and the conversion kits that were the subject of the Prior Litigation are collectively referred to herein as Specnor's "Pre-2001 Products."

14. As part of the settlement of the Prior Litigation, Specnor admitted that its Pre-2001 Products infringed the '489 Patent. Specnor accordingly took a license under the '489 Patent to cover its sales of Pre-2001 products. *See* Ex. B, Joint Stipulation and Request for Entry of Agreed Order and Permanent Injunction (hereinafter "License Agreement"). Specnor also made a payment of $200,000.00 as a paid up royalty for past infringement.

15. According to the License Agreement, Specnor was free to "manufacture, use, offer for sale and sell products covered by the '489 patent within the United States." Ex. B at ¶ 8.

16. For the Pre-2001 Products, the parties agreed to a royalty rate. Namely, for each Pre-2001 Product (i.e. inert wave solder machine or conversion kit), Specnor agreed to pay a royalty of $4,000.00 per machine.

17. Following execution of the License Agreement, Specnor ceased sales of its Pre-2001 Products. Specnor made this decision insomuch as the agreed royalty rate made the Pre-2001 Products unprofitable.

18. The parties existed peacefully under License Agreement for the last 8 years.

19. Perhaps recognizing the imminent expiration of the '489 Patent, Speedline ended the peaceful co-existence of the parties in October of 2009. Specifically, Speedline exercised its audit right under the License Agreement. *See* Ex. B at ¶ 9. This audit was the first (and only) time Speedline audited Specnor.

20. Speedline included a laundry list of items in its audit request. *See* Ex. C, Ltr. from K. Noe to T. Gyemant of 10/07/09. Most of these items were well outside the scope of the License Agreement and irrelevant to whether or not Specnor had paid the requisite $4,000.00 per Pre-2001 Product. *See id.* at 3-4 (i.e. demanding a tour of Specnor's facility and seemingly unfettered access to all of Specnor's confidential engineering drawings).

21. Notably, the audit right Speedline exercised (and the sole audit right the parties agreed to) related *only* to the royalty payment outlined in paragraph 9 of the License Agreement. *See* Ex. B. In fact, this was the only royalty contemplated by the License Agreement.

22. Specnor sought to minimize the expense to Speedline of its audit by offering to gather and send the relevant documents to Speedline at its offices. *See* Ex. D, Ltr. from M. Colitz to K. Noe of 10/22/09.

23. Speedline rejected this offer and insisted on sending an auditor to Specnor's facilities. Specnor complied.

24. Unbeknownst to Specnor, the agreement between Speedline and its auditor included a "finder's fee" provision. Specifically, the auditor's compensation was directly tied to

any deficient royalty payments supposedly uncovered by the audit. Speedline presumably has a copy of the agreement between it and its auditor. Thus far, Speedline has refused to provide a copy of this agreement to Specnor.

25. Speedline's auditor identified 32 allegedly non-accounted for Pre-2001 Products for which Specnor had not paid the $4,000.00 royalty. (These 32 products are referred to below as the "Identified Products.")

26. However, the Identified Products are not the Pre-2001 Products referenced in the Licensing Agreement. Namely, the Identified Products are neither complete inert wave solder machines, nor are they conversion kits. Rather, the audit simply uncovered sales of replacement parts for existing inert wave soldering machines. Speedline is insisting on applying the $4,000.00 royalty outlined in the Licensing Agreement to these replacement parts.

27. The audit report seeks back royalties for the Identified Products totaling (with interest) $163,211.90. The report also seeks an auditor's fee (which Specnor was to pay if its auditor found large enough errors) of $70,479.20.

28. When challenged regarding the outrageous amount of the auditor's fee, Speedline conceded that approximately $25,000 of the auditor's "fee" was a finder's fee. Speedline has since reduced its demand to $46,000 for the auditor, and approximately $160,000 for alleged royalty errors.

29. Specnor responded that the amounts demanded were unreasonable. The total gross sales for all 32 Identified Products is less than $1,000,000. Thus, the "reasonable royalty" demanded by Speedline amounts to 16% of Specnor's sales.

30. Specnor has also pointed out numerous deficiencies in the audit. These deficiencies include duplicate invoices and invoices for sales outside of the United States.

31. In light of the auditor's clear bias to find defects (to increase his own compensation), combined with the numerous deficiencies identified with the audit, Specnor refused to pay Speedline's demand, and instead offered a reasonable settlement proposal. *See* Ex. E, Ltr. from M. Colitz to K. Noe of May 5, 2010. Speedline refused.

32. As the '489 Patent approaches the end of its enforceable life and the inventions contained therein enter the public domain, Speedline is impermissibly imposing a royalty for individual replacement parts for use in connection with existing wave solder machines. This is neither what the parties agreed to, nor is it reasonable.

33. Similarly, sales by Specnor of replacement parts for existing inert gas wave solder machines cannot constitute an infringement of the '489 Patent.

34. The Identified Products are *parts* used in wave soldering machines. More importantly, these parts alone do not infringe any claims of the '489 Patent.

35. Regardless, even if sales of replacement parts did constitute an infringement of the '489 Patent, the License Agreement permits Specnor to make and sell these components.

## Declaratory Judgment of Non-Infringement
## (COUNT I)

36. Specnor incorporates by reference paragraphs 1-35 of this Complaint.

37. Speedline's attempt to exert a $4,000.00 royalty payment on non Pre-2001 Products presents a real, actual and substantial controversy that is ripe for adjudication under the Federal Declaratory Judgment Act.

38. Specnor therefore seeks a declaratory judgment that the Identified Products do not infringe the '489 Patent.

39. Alternatively, if the Identified Products are found to infringe the '489 Patent, Specnor seeks a determination of a reasonable royalty.

40. Both these questions turn on issues of federal law and the scope and extent of the claims of the '489 Patent. Similarly, if the Identified Products are within the scope of the '489 Patent, a determination of the appropriate royalty is a question of federal patent law.

41. Therefore, Specnor brings this declaratory judgment action, seeking a declaration that the Identified Products do not infringe the '489 Patent. Alternatively, Specnor seeks a declaration setting forth the appropriate royalty to pay for the Identified Products under the License Agreement.

### Prayer for Relief

WHEREFORE, Specnor prays for a judgment against Speedline as follows:

1. A declaratory judgment that the Identified Products do not infringe any claim of the '489 Patent, and thus are not subject to the License Agreement.

2. Alternatively, a declaratory judgment setting forth an appropriate and reasonable royalty to pay for the Identified Products.

3. That Speedline be required to pay Specnor its costs incurred in bringing this action, including Specnor's reasonable attorneys fees.

4. That Specnor be awarded such other, further, and different relief as the Court deems just and proper.

### Jury Demand

5. Specnor demands a trial by jury on all issues triable by a jury

Respectfully submitted,

_/s/ Michael J. Colitz, III_
Michael J. Colitz, III
Trial Counsel
Florida Bar No. 164348
Woodrow H. Pollack

Florida Bar No. 26802
GrayRobinson, PA
201 N. Franklin Street, Suite 2200
t: 813-273-5000
f: 813-273-5145
<u>michael.colitz@gray-robinson.com</u>
<u>woodrow.pollack@gray-robinson.com</u>
**ATTORNEYS FOR PLAINTIFF**

# 2071563 v1

- 8 -