UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SPECNOR TECNIC CORP

    Plaintiffs,

        v.                                  Case No. 8:10-CV-01148 RAL-MAP

SPEEDLINE TECHNOLOGIES, INC.,

    Defendant.

_____/

## **MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Defendant SPEEDLINE TECHNOLOGIES, INC. ("Speedline"), by its counsel, hereby moves for an Order dismissing this case pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. On September 29, 2000, Plaintiff SPECNOR TECNIC CORP. ("Specnor Tecnic") was sued on the patent on which they now seek declaratory relief, U.S. Patent No. 5,203,489 (the "'489 Patent"). That litigation was settled by this court's AGREED ORDER AND PERMANENT INJUNCTION, entered on May 29, 2001, which included a permanent injunction prohibiting Specnor Tecnic from infringing the patent other than as licensed.

Recently, Speedline audited Specnor Tecnic's sales data, and the audit revealed sales of infringing products both within and outside the scope of the license. When confronted by Speedline with the audit results, Specnor Tecnic refused to cease infringement and refused to pay the royalties it owes, baldly arguing that the royalty rate should be lower than the rate to which Specnor Tecnic itself agreed. Specnor Tecnic now attempts to avoid contempt

proceedings in the original litigation by means of this new Declaratory Judgment action.[1] However, given that Specnor Tecnic has made no argument that the products that it continued to sell are in any way different than those it stipulated to be infringements of the '489 patent, Specnor Tecnic is barred by the doctrine of res judicata from re-litigating infringement regarding those products, and therefore its Declaratory Judgment complaint fails to state a claim upon which relief can be granted.

The grounds for this motion are set forth below.

I. Introduction and Background

Speedline sued Specnor Tecnic for infringement of Speedline's U.S. Patent No. 5,203,489 entitled "Gas Shrouded Wave Soldering" (the "'489 patent"). The '489 patent is directed generally to methods and apparati for wave soldering of components such as printed wiring boards, and more specifically to solder coating of wettable metallic surfaces or joining at least two wettable metallic surfaces on wiring boards in a solder wave wherein the wave is blanketed with a gas atmosphere. A photocopy of the '489 patent is attached hereto as Exhibit 1.

Following mediation before Magistrate Judge Jenkins, the parties entered into a Joint Stipulation and Request for Entry of Agreed Order and Permanent Injunction ("Joint Stipulation"). A copy of the Joint Stipulation is attached hereto as Exhibit 2. This Court signed and entered the Agreed Order and Permanent Injunction ("Permanent Injunction") on May 29, 2001. A copy of the Permanent Injunction is attached hereto as Exhibit 3.

---

[1] Speedline has moved for contempt in the prior proceeding. See Motion for Contempt, filed on June 23, 2010, a copy of which is attached hereto as Exhibit 4.

In the Joint Stipulation, Specnor Tecnic stipulated that the '489 patent is "valid and enforceable for the purposes of the present litigation and any future action" (para. 4), and that Specnor Tecnic's "accused wave solder products with a nitrogen option, and the accused nitrogen retrofit kits for wave solder apparatus, are covered by one or more claims of the '489 patent" (para. 6). Other obligations under the Joint Stipulation are laid out in the Motion for Contempt.

Paragraph 1 of the Permanent Injunction orders that, unless licensed by Plaintiffs, Specnor Tecnic is "permanently enjoined from manufacturing, using, offering for sale, or selling in the United States at any time after entry of this Order any wave soldering apparatus that infringes any claim of U.S. Patent No. 5,204,489… literally or under the doctrine of equivalents."

In paragraph 6 of the Permanent Injunction, Specnor Tecnic "acknowledges the jurisdiction of this Court to enter and enforce this Order."

The Permanent Injunction concludes by stating "[t]his Order represents the final resolution of all claims raised in this litigation."

II. <u>Defendant Specnor Tecnic's Recent Activities</u>

In October 2006, Speedline became aware that Specnor Tecnic was offering for sale a "Nitrogen Inert Soldering" retrofit kit for Speedline's wave solder machines. Specnor Tecnic had to that point paid no royalties under the license. When confronted about this, Specnor Tecnic, through outside counsel, reported on November 17, 2006 that it had made a sale of a single kit, and agreed to pay the $4,000 royalty due on the kit. *See* Letter of November 17, 2006 from Michael Colitz, counsel for Specnor Tecnic, to Keith Noe, a copy of which is

attached hereto as Exhibit 5.  No further royalty payments have been received from Specnor Tecnic since that time.

Recently, Speedline, pursuant to the Joint Agreement, had an independent auditing firm, AmiCOUR IP Group, LLC ("AmiCOUR"), conduct an audit of Specnor Tecnic. AmiCOUR issued its report on February 5, 2010.  A copy of this report is attached hereto as Exhibit 6.  The audit uncovered at least 26 invoices identifying the sale of a total of 32 infringing kits, without payment of the agreed-upon royalty, a violation of paragraph 9 of the Joint Agreement.  Each of these kits, labeled "replacement parts" by Specnor Tecnic, includes a shroud or cover and a gas diffuser tube that are no different than the cover and gas diffuser tube contained in the "retrofit kits" admitted to be infringing by Specnor Tecnic.

When the auditor brought these "replacement parts" to the attention of Specnor Tecnic, Tony Grymond, Executive Vice President of Specnor Tecnic, stated that Specnor Tecnic's position was that it must pay a royalty when selling inert wave solder machines or retrofit kits for converting non-nitrogen wave solder machines to nitrogen-capable machines, but that no royalty was due for selling "replacement parts," even where the combined replacement parts infringed one or more claims of the '489 patent.  Specnor Tecnic also took the position that it was not required to pay a royalty on reselling of refurbished used machines, even where the refurbishment included replacing the patented components in their entirety.  Finally, Specnor Tecnic took the position that, so long as the infringing products sold ultimately were delivered to companies outside of the United States, no royalty payments were due, even though the products were initially delivered to addresses within the United States.  At no point did Specnor Tecnic deny that these "replacement parts" infringed

4

1048064.1

the '489 patent, or indicate that they were different in any way, material or otherwise, from the products Specnor Tecnic agreed infringed the '489 Patent.

Speedline informed Specnor Tecnic of its breach of the Joint Agreement by letter of February 22, 2010 from Keith Noe to Michael Colitz. A copy of this letter is attached as Exhibit 7. To date, Specnor Tecnic has failed to cure this breach.

After attempts by Speedline to settle the matter proved unsuccessful, Specnor Tecnic proceeded to file this Complaint for Declaratory Judgment, seeking a declaration that "certain accused products of Specnor do not infringe U.S. Patent 5,203,489… [or] alternatively… to establish a reasonable royalty for those accused products pursuant to" the Joint Agreement and Permanent Injunction entered in this case.

## MEMORANDUM OF LAW

### I. Res Judicata

Res judicata precludes the relitigation of a claim, or cause of action, or any defense to the cause of action that was brought or that could have been brought, when the original litigation is ended by a judgment of the court. *See, e.g.*, *Nystrom v. Trex Co.*, 580 F.3d 1281, 1284-1285 (Fed. Cir. 2009); *Pactiv Corp. v. Dow Chemical Corp.*, 449 F.3d 1227, 1230 (Fed. Cir. 2006); *Hallco Mfg., Co. v. Foster, 256 F.3d 1290, 1294 (Fed. Cir. 2001)*; *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 476 (Fed. Cir. 1991); *see also* RESTATEMENT (SECOND) OF JUDGMENTS, §§ 18, 19 (1982). This aspect of *res judicata*, known also as "claim preclusion", applies whether the judgment of the court is rendered after trial and imposed by the court or the judgment is entered upon the consent of the parties. *See, e.g.*, *Pactiv,* 449 F.3d at 1230 ("[a] dismissal with prejudice is a judgment on the merits for purposes of claim

5
1048064.1

preclusion."); *Foster*, 947 F.2d at 476 (*citing Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 327 (1955)) (additional citations omitted).

"The principles of law denominated 'res judicata' embody the public policy of putting an end to litigation." *Foster*, 947 F.2d at 476.

> [The] general rule [of *res judicata*] is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals, in respect of all matters properly put in issue and actually determined by them.

*Southern Pacific R.R. Co. v. United States*, 168 U.S. 1, 49 (1897); *see also* 18 C. WRIGHT, A. MILLER AND E. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 4403 at 15 (1981) (repose is the most important product of res judicata); *see also Hartley v. Mentor Corp.*, 869 F.2d 1469, 1473 n. 5 (Fed. Cir. 1989) (noting a strong public interest in settlement of patent litigation).

For claim preclusion to apply in a patent case, the accused product or process in the second suit must be "essentially the same" as the accused product or process in the first suit. *Nystrom*, 580 F.3d at 1285 (noting that "[c]olorable changes in an infringing device or changes unrelated to the limitations in the claim of the patent would not present a new cause of action."); *Foster*, 947 F.2d at 480 (noting that "changes to devices are only 'colorably different' from those previously adjudged to infringe enables a contempt proceeding on a prior judgment to proceed").

A motion to dismiss is a suitable means of raising the issue of *res judicata*. *See, e.g.*, *Pactiv Corp. v. Dow Chemical Corp.*, 449 F.3d 1227, 1230 (Fed. Cir. 2006) (affirming dismissal of Declaratory Judgment action pursuant to Rule 12(b)(6) on *res judicata* grounds).

The party asserting claim preclusion bears the burden to show that the newly-accused accused product is essentially the same as the accused product(s) in the prior litigation. *Foster*, 947 F.2d at 480.

**Argument**

I. <u>Specnor Tecnic's Declaratory Judgment Claims Are Barred By Res Judicata</u>

    a. A Judgment Of Infringement of the '489 Patent Was Entered In The <u>Original Litigation</u>

The original litigation included a count accusing Specnor Tecnic of infringing the '489 Patent. *See* Second Amended Complaint from the original litigation, a copy of which is attached as Exhibit 8, at paragraphs 30-35. The original litigation involved both wave soldering machines and nitrogen retrofit kits for wave soldering machines, each of which Specnor Tecnic ultimately stipulated to infringing the '489 patent. *See* Joint Stipulation at Para. 6. Judgment was entered via the Permanent Order. *See* Permanent Order at 3 ("[t]his Order represents the final resolution of all claims raised in this litigation."); *Pactiv,* 449 F.3d at 1230; *Foster*, 947 F.2d at 476 (*citing Lawlor*, 349 U.S. at 327).

    b. The Defense Of Noninfringement Could Have Been Brought In The <u>Original Litigation</u>

Noninfringement is undeniably a defense that could have been brought in the original litigation. 35 U.S.C. § 282 ("The following shall be defenses in any action involving the validity or infringement of a patent… (1) noninfringement…"); *see also Foster*, 947 F.2d at 479 n. 8. That defense could have been brough both as to wave soldering machines and as to kits for enabling wave soldering machines (referred to as "retrofit kits" in the Joint

Stipulation), each of which were the subject of the original litigation and subsequent resolution.  *See* Joint Stipulation at Para. 6.

> c. The "Identified Products" Are The Same As The "Retrofit Kits" That Were The Subject Of The Original Litigation

In its Declaratory Judgment Complaint, Specnor Tecnic refers to 32 products that Speedline's auditor identified as infringing and for which no royalty had been paid, which Specnor Tecnic refers to as "Identified Products."  *See* Complaint at 25.  Specnor Tecnic does not assert in the Complaint that these Identified Products differ in any way from the "Retrofit Kits" (or "Conversion Kits" as they are referred to in the Complaint) that it admitted in the original litigation infringe the '489 Patent.  In fact, these "replacement parts" collectively include the same combination of a shroud or cover and at least one diffuser tube that Specnor Tecnic has admitted infringes the '489 patent.  *See* auditor's report, Exhibit 6, at 5-6.  Specnor Tecnic has not asserted that it redesigned either of these components to avoid infringement, or that it took any other steps to avoid infringement.  Specnor Tecnic instead merely removed the name "Retrofit Kit" from the collection of components, and then purported to sell the items as "replacement parts."  With regard to each of the 32 Identified Products, the invoices demonstrate that these "replacement parts" included all of the components of the admittedly-infringing "Retrofit Kits" in unchanged form.  Specnor Tecnic's mere re-labeling of the infringing set of components as a "replacement parts" does not constitute even a colorable change in the infringing product – the Identified Products are not only "essentially" the same as those found to infringe, they are identical.

8

1048064.1

Consequently, these Identified Products fall within the Permanent Injunction and the Joint Stipulation in the original litigation, and any further consideration of the infringement issue is barred by res judicata.

**Conclusion**

Specnor Tecnic entered into the Joint Stipulation purporting to take a license and resolve litigation. Specnor Tecnic then continued to infringe the '489 patent in a manner not licensed; continued to practice the patent as contemplated by the license without ever voluntarily paying a royalty as required by the agreed-upon license; and now has filed a new lawsuit with the hope of renegotiating the amount of royalty it must pay to continue practicing Speedline's patented invention. Specnor Tecnic made no effort to avoid infringement, either by ceasing sales or respecting the license agreement. Most important, Specnor Tecnic made no effort to redesign its products to avoid falling within the scope of the claims. The issues presented in the Complaint have been litigated and concluded. It is time that repose was granted.

WHEREFORE, Speedline respectfully requests that this Court dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because the claims are barred by res judicata and the complaint therefore fails to state a case upon which relief can be granted.

Respectfully submitted,

/s/ *Ryan M. Scully*
Jeffrey M. Paskert, Esq.
Florida Bar No. 846041
jpaskert@mpdlegal.com
Ryan M. Scully, Esq.
Florida Bar No. 0030944
rscully@mpdlegal.com

1048064.1

> MILLS PASKERT DIVERS
> 100 North Tampa Street, Suite 2010
> Tampa, Florida 33602
> Office: 813.229.3500
> Facsimile: 813.229.3502
> *Local Counsel for Speedline*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12 day of July, 2010, I caused a copy of the foregoing document to be filed with the Court's electronic filing system.

> /s/ *Ryan M. Scully*
> Attorney